UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TROBY BENSON,<br><br>    Plaintiff,<br><br>v.<br><br>SERGEANT ADAM KUBRAK,<br><br>    Defendant. | Case No. 23-10284<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [29]**

On a Sunday evening in February 2020, Troby Benson called 911 after his niece's boyfriend "picked up a large candle, threw it [at him], and split [his] head open." (ECF No. 1, PageID.2.) Paramedics and three Redford Township police officers responded to the call. (*Id.*) As the paramedics examined Benson, his niece told officers that Benson had "pulled a gun on her boyfriend," so he had thrown the candle at Benson in self-defense. (*Id.*) Benson responded that his niece was lying. (*Id.*) But as he "stepped out of the house to go to the hospital," Sergeant Adam Kubrak arrested him for felonious assault. (*Id.*) Another officer escorted Benson to the hospital and later to the Redford Township Jail, where he was detained until his arraignment and probable cause hearing Wednesday morning, approximately 62 hours after his arrest. (*Id.* at PageID.3, 14–20.)

Benson believed his constitutional rights were violated during this episode, so he filed this *pro se* suit under 42 U.S.C. § 1983, alleging that Kubrak arrested him

without probable cause and failed to "promptly" bring him before a judicial officer in violation of the Fourth Amendment. (*Id.* at PageID.3.) In short order, the Court granted Benson's application to proceed without prepaying fees or costs and dismissed the unlawful arrest claim, leaving only Benson's claim that there was unconstitutional delay between his arrest and probable cause hearing. *See Benson v. Kubrak*, No. 23-10284, 2023 WL 2267156 (E.D. Mich. Feb. 28, 2023), *available at* (ECF No. 5).

Kubrak now moves for summary judgment on Benson's remaining claim. (ECF No. 29.) Benson opposes the motion. (ECF No. 36.) Given the adequate briefing and record, the Court considers the motion without further argument. *See* E.D. Mich. LR 7.1(f). Because Kubrak is entitled to qualified immunity, the Court GRANTS his motion for summary judgment.

**I. Standards**

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Or, stated less formally, Kubrak is entitled to summary judgment only if no reasonable jury could find in favor of Benson. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). In applying this standard, the Court views the facts and reasonable inferences in the light most favorable to Benson. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). That is, if the parties disagree about a fact that is relevant to the outcome, the Court may not accept Kubrak's version.

2

In response to a claim brought under 42 U.S.C. § 1983 ("Section 1983"), a government official may raise the defense of qualified immunity. This defense "shield[s] an officer from personal liability when [he] reasonably believes that his . . . conduct complies with the law." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009). It is "an officer-friendly doctrine," *Williams v. City of Flint*, 814 F. App'x 973, 979 (6th Cir. 2020), that "allows police officers 'breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law,'" *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1017 (6th Cir. 2024) (quoting *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam)). In other words, "[o]fficials are not liable [under Section 1983] for bad guesses in gray areas; they are liable for transgressing bright lines." *Parsons v. City of Ann Arbor*, No. 22-1338, 2023 WL 3413898, at *2 (6th Cir. May 12, 2023) (quoting *Rudlaff v. Gillispie*, 791 F.3d 638, 644 (6th Cir. 2015)); *see Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008) ("The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." (citation omitted)).

The Court asks two questions when evaluating whether an officer is entitled to qualified immunity: (1) whether the facts show that the officer's conduct violated a constitutional right, and (2) whether that right is clearly established such that "every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam); *see Woodcock v. City of Bowling Green*, 679 F. App'x 419, 423 (6th Cir. 2017); *Crawford v. Tilley*, 15 F.4th 752, 764 (6th Cir. 2021). The Court may address the questions "in any order." *Martin*

3

*v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (citing *Pearson*, 555 U.S. at 236). Once a defendant raises the defense, the burden is on the plaintiff to establish that the Court should not grant qualified immunity. *See Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009).

## II. Analysis

To survive summary judgment, Benson must show that Kubrak violated his Fourth Amendment right to a prompt probable cause determination and that, at the time of the violation, that right was "clearly established." *See Cunningham v. Shelby County*, 994 F.3d 761, 764 (6th Cir. 2021).

But Benson does not address this claim in his response to Kubrak's motion for summary judgment. He does not even reach the facts of his post-arrest detention and probable cause hearing. He focuses on only his dismissed[1] false arrest claim—the facts surrounding his initial arrest, officers' search of his home after he was transported to the hospital, and his belief that Kubrak "is commit[t]ing perjury . . . to cover up the facts that he did not have probable cause to arrest [Benson] for felonious assault and planted a gun on [Benson], and had [Benson] arrested for felon in possession instead of felonious assault on a forged, fabricate[d] search." (ECF No. 36,

---

[1] After dismissing Benson's false arrest claim a few weeks after he filed suit (ECF No. 5), the Court restated that dismissal when it denied his motion to alter or amend the judgment (ECF No. 14). The Court also held a status conference with the parties after Kubrak filed his summary judgment motion but before Benson filed his response (*see* ECF Nos. 32–33), during which it reiterated that Benson's false arrest claim is no longer before the Court and indeed is not at issue in Kubrak's motion.

4

PageID.281.) So even on the most liberal reading of Benson's response,[2] he fails to rebut Kubrak's qualified immunity defense. *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

That said, the critical facts are undisputed here. So Kubrak's defense of qualified immunity is a legal question to be decided by the Court. *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Poe v. Haydon*, 853 F.2d 418, 425–26 (6th Cir. 1988).

### A. Constitutional Violation

Start with the constitutional right at issue.

Under the Fourth Amendment, individuals arrested and detained without a warrant are entitled to a "prompt" judicial determination of probable cause. *See Gerstein v. Pugh*, 420 U.S. 103, 125 (1975); *Drogosch v. Metcalf*, 557 F.3d 372, 378 (6th Cir. 2009). Generally, a probable cause determination is sufficiently "prompt" when provided within 48 hours of an individual's arrest. *See Brown v. Knapp*, 75 F.4th 638, 649 (6th Cir. 2023) (citing *County of Riverside v. McLaughlin*, 500 U.S. 44,

---

[2] *Cf. Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) ("While courts must apply 'less stringent standards' in determining whether pro se pleadings state a claim for which relief can be granted, pro se plaintiffs are not automatically entitled to take every case to trial. As [the Sixth Circuit] has noted, the lenient treatment generally accorded to pro se litigants has limits." (citations omitted)); *Farah v. Wellington*, 295 F. App'x 743, 748 (6th Cir. 2008) ("[C]omplete inattention to the merits of Defendant['s] summary judgment motion represents one such limit." (quoting *Pilgrim*, 92 F.3d at 416)); *Tucker v. Union of Needletrades, Indus., & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (explaining that the liberal standards that apply at the pleading stage do not apply "[o]nce a case has progressed to the summary judgment stage"); *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) ("[Plaintiff's] status as a pro se litigant does not alter his duty on a summary judgment motion." (citation omitted)).

56–57 (1991)); *cf. Riverside*, 500 U.S. at 56 (explaining that a probable cause hearing held within 48 hours may still be constitutionally deficient if unreasonably delayed). If an arrestee must wait longer than 48 hours, the government has the burden of justifying the delay by showing "the existence of a bona fide emergency or other extraordinary circumstance." *Riverside*, 500 U.S. at 57. Absent such justification, a "*Riverside* violation" has occurred.

The Court "look[s] to state law to determine who is responsible for ensuring that a judicial determination of probable cause takes place within 48 hours" of a warrantless arrest, i.e., who has a "*Riverside* obligation." *Cherrington v. Skeeter*, 344 F.3d 631, 644 (6th Cir. 2003) (citing *Christian v. Belcher*, 888 F.2d 410, 414 (6th Cir. 1989)). Michigan law provides that an arresting officer has that obligation. *See Drogosch*, 557 F.3d at 378–79 (quoting Mich. Comp. Laws § 764.13).

Kubrak concedes that he arrested Benson without a warrant, that Benson was then detained for about 62 hours before he was given a probable cause hearing, and that, absent extraordinary circumstances, Benson was constitutionally entitled to a hearing sooner. (ECF No. 29, PageID.137, 140, 146–147, 150–151.) And the Sixth Circuit has held that where the "undisputed record" establishes a violation of the *Riverside* 48-hour rule and the defendant fails to "identify any emergency or other extraordinary circumstance" as justification, the plaintiff "can withstand the first prong of the qualified immunity inquiry by virtue of the violation of [his] Fourth Amendment right to a judicial determination of probable cause within 48 hours" of arrest. *Cherrington*, 344 F.3d at 644. So the question is whether Kubrak can establish

6

emergency or extraordinary circumstances justifying the otherwise unconstitutional delay in Benson's probable cause determination. *See Brown*, 75 F.4th at 652.

But Kubrak does not contend that the circumstances here were extraordinary. His argument is more fundamental—that he did not *personally* violate Benson's right to a prompt probable cause hearing and thus cannot be held liable. (ECF No. 29, PageID.151–153.) Kubrak points to the "traditional tort principle" underlying Section 1983, *see Pineda v. Hamilton County*, 977 F.3d 483, 490 (6th Cir. 2020), that a defendant's liability depends on his personal involvement in the constitutional deprivation (*see* ECF No. 29, PageID.151–153).

Kubrak explains that after he arrested Benson and Benson was taken to the hospital, another officer responded to the scene with a search warrant. (*Id.* at PageID.144.) The newly arrived officer "serv[ed] as the officer in charge ('OIC') for the remainder of the investigation," and Kubrak and his trainee helped execute the search for Benson's gun. (*Id.*; *see id.* at PageID.151–152.) After the gun was located, Kubrak returned to the station. (*Id.* at PageID.152.) His trainee wrote up a police report (ECF No. 29-6, PageID.192–194), which Kubrak reviewed and approved around 2 a.m. on Monday, February 3, and from there Kubrak says he had "no further involvement with [Benson] or the Redford PD's then-ongoing investigation." (ECF No. 29, PageID.152.) The OIC prepared and submitted the warrant packet that same day (ECF No. 29-8, PageID.214–215), the reviewing prosecutor approved it the following day, Tuesday, February 4 (*id.* at PageID.216–222), and Benson's probable cause hearing was held the day after that, Wednesday, February 5, just before 11:15 a.m.

7

(ECF No. 29, PageID.152). Only the OIC attended, and the court found probable cause to issue the four-count warrant. (*Id.*; *see* ECF No. 1, PageID.14–17.)

On these facts, Kubrak asserts that "any failure to have the probable cause determination made within 48 hours after [Benson's] arrest had nothing to do with Defendant Kubrak and, instead, was caused by events entirely out of his control." (ECF No. 29, PageID.137–138.) He contends he had "no authority to convene the probable cause determination" (*id.* at PageID.152 (citing Mich. Comp. Laws § 764.1a(1))) and "no control over the alleged constitutional deprivation" (*id.* at PageID.153).

But that argument was recently rejected by the Sixth Circuit in *Brown v. Knapp*, 75 F.4th 638, 650–52 (6th Cir. 2023). There, the police officer defendants similarly asserted that they "lacked the power to convene a probable cause hearing on their own" and "assume[d] that [the assistant prosecutor] would secure [the] arrest warrant." *Brown*, 75 F.4th at 651. In response, the *Brown* panel acknowledged that, "[a]lthough Michigan law requires the arresting officer to bring a person arrested without a warrant before a magistrate for their probable cause hearing, other parties must act as well: the prosecutor requests the warrant and a magistrate makes a finding of reasonable cause and ultimately issues the warrant." *Id.* (citing Mich. Comp. Laws § 764.1a(1), (2)(d), (4)). Nonetheless, the Sixth Circuit concluded that Michigan law imposes a *Riverside* obligation on arresting officers, and they "cannot skirt this duty by pointing fingers elsewhere." *Id.*

8

Kubrak does not seem to argue that it is an extraordinary circumstance that he had no control over the delay, but even read that way the argument fails. In *Brown*, after rejecting the officers' blame-shifting argument, the panel addressed the officers' "proposed 'extraordinary circumstance'" that multiple officers had been involved in arresting the plaintiff and transporting her to custody. *Id.* at 652. That did not create an exception to the 48-hour rule, the court explained. *Id.* "[A]n everyday occurrence in arrests across the country"—in *Brown*, the involvement of multiple officers; here, the short-term, discreet involvement of an arresting officer—does not "prevent or excuse [the defendant officers] from complying with their *Riverside* obligations." *Id.* The typical, everyday mechanics of arrests are *ordinary* circumstances for purposes of the *Riverside* analysis, not extraordinary.

So the undisputed facts and governing law show a constitutional violation under the first qualified immunity prong. Benson was not given a probable cause determination for more than 48 hours, and Kubrak fails to show extraordinary circumstances. But Benson only defeats Kubrak's qualified immunity defense if that right was also clearly established at the time of the violation.

### B. Not Clearly Established

Kubrak argues that even if he violated Benson's constitutional right to a prompt probable cause hearing, his actions were not objectively unreasonable because the right was not clearly established at the time of the violation. The Court agrees.

9

"In order to conclude that the right which the official allegedly violated is 'clearly established,' the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. This question boils down to whether an officer's conduct was "objectively unreasonable" in light of pre-existing law, namely decisions of the Supreme Court and Sixth Circuit.[3] *Mich. Interlock, LLC v. Alcohol Detection Sys., LLC*, 802 F. App'x 993, 1002 (6th Cir. 2020) ("This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" (quoting *Pearson*, 555 U.S. at 244)); *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("'[T]he salient question . . . is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'" (alterations and omission in original) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002))); *Bambach v. Moegle*, 92 F.4th 615, 623 (6th Cir. 2024) ("The immunity applies when an officer 'reasonably misapprehends the law governing the circumstances she confronted,' even if that

---

[3] The Court borrows helpful language from the Northern District of Illinois: "It would be understandable for a pro se litigant to be confused or frustrated by application of the doctrine of qualified immunity. It is complicated and has generated much debate, even at times among justices of the United States Supreme Court. The bottom line, however, is that the law protects a police officer from liability if the officer's actions are a product of a reasonable mistake about what the law requires. In other words, if it was reasonable for the officer to believe he was acting reasonably, he will not be liable for his actions under the Fourth Amendment even if the officer acted unreasonably. This is the balance the law has struck between individual rights under the Fourth Amendment and the difficult decisions police officers must make on a daily basis." *McDuffie v. Looney*, No. 16-8860, 2018 WL 6604248, at *3 (N.D. Ill. Dec. 17, 2018) (citation omitted).

misapprehension was 'constitutionally deficient.'" (quoting *Taylor v. Riojas*, 592 U.S. 7, 8 (2020) (per curiam))); *Barber v. Miller*, 809 F.3d 840, 845 (6th Cir. 2015) ("[Courts] look first to decisions of the Supreme Court, then to [Sixth Circuit precedent], and then to decisions of other Courts of Appeal." (quoting *Andrews v. Hickman County*, 700 F.3d 845, 853 (6th Cir. 2012))).

Here, the question is whether it would have been "apparent" to every reasonable officer standing in Kubrak's shoes in February 2020 that failure to do more to ensure Benson's prompt probable cause hearing was a Fourth Amendment violation. *See Anderson*, 483 U.S. at 640. It would not have been. The contours of this right, including arresting officers' obligations under *Riverside*, were not clear in 2020, and remain unclear even now.

According to the Sixth Circuit, at least since 2003 "officers are assumed to be aware of an individual's right to a probable cause determination within 48 hours" of a warrantless arrest. *Brown*, 75 F.4th at 655 (citing *Cherrington v. Skeeter*, 344 F.3d 631, 644 (6th Cir. 2003)). Likewise, it was clearly established by 2009 that, "in Michigan, arresting officers have an obligation to try to secure a probable cause hearing for the person they arrest, including by filing appropriate paperwork." *Id.* (citing *Drogosch*, 557 F.3d at 379–80; *Cherrington*, 344 F.3d at 644). Specifically, the Sixth Circuit held in 2009 that an arresting officer was not entitled to qualified immunity where he delayed an arrestee's probable cause hearing well beyond 48 hours by intentionally completing the wrong paperwork. *See Drogosch*, 557 F.3d at 379–80.

So by the time Benson was arrested in 2020, it was clearly established that Benson had a right to a probable cause hearing within 48 hours, that Kubrak, as an arresting officer, had a constitutional obligation to help secure that hearing, and that at minimum Kubrak could not do something to intentionally delay that hearing. But what was far less clear was what, if any, affirmative duties Kubrak had to ensure Benson's prompt probable cause determination.

Indeed, in an unpublished opinion in 2021, the Sixth Circuit granted qualified immunity under the "clearly established" prong where an arresting officer's actions "ma[d]e him neither a willful violator of the law nor plainly incompetent." *Roberson v. Wynkoop*, No. 21-1240, 2021 WL 5190902, at *3 (6th Cir. Nov. 9, 2021) (per curiam). The Court thus suggested that at least those outer bounds were clearly established as of the underlying incident in 2016—and that the defendant had not transgressed them where he properly completed the requisite paperwork then "rel[ied] on other agencies and actors in the criminal justice system . . . [and] expect[ed] the process to occur in a timely manner, as it normally [did]." *Id.*

Recently, in *Brown v. Knapp*, the Sixth Circuit denied qualified immunity as to a plaintiff's *Riverside* claim stemming from a 2018 arrest and detention. *See Brown*, 75 F.4th at 655. The court explained that by then it was clearly established that the Fourth Amendment requires arresting officers to do something more than *nothing* to ensure the person they arrest receives a prompt probable cause hearing. There, the defendants "did not even attempt" to facilitate the plaintiff's probable cause hearing. *Id.* at 651. They "made no efforts," *id.* at 655, not even doing what was

12

within the scope of their standard post-arrest procedure; although prosecutors typically waited to prepare a warrant or complaint until the arresting officers submitted a "prosecutor's packet," the defendants had completed no paperwork after the arrest, *id.* at 651; *see id.* at 645.

The Sixth Circuit distinguished the *Brown* defendants, who "took [no] steps at all to facilitate a timely probable cause hearing for [the plaintiff]," *id.* at 654, from the officer in *Roberson*, who had at least completed the requisite post-arrest paperwork, *see id.* at 654–55. It did not comment, though, on whether the officer in *Roberson* had fulfilled his constitutional obligation. Nor had the *Roberson* panel itself addressed that question, granting qualified immunity on the second prong of the inquiry without reaching the first. So even as of 2023, three years after Benson's arrest, it remained unclear whether it is constitutionally sufficient for an arresting officer to do his part—namely, by completing post-arrest paperwork—and then conclude that the matter is "out of [his] hands." *Roberson*, 2021 WL 5190902, at *1 (alteration in original). And while *Brown* rejected the idea that "pointing fingers elsewhere" is a defense to a *Riverside* violation, it still did not clearly establish what an arresting officer must do to fulfill his *Riverside* obligations. *Brown*, 75 F.4th at 651. Even if it had, it was decided three years after Benson was arrested, so it did nothing to put Kubrak on notice.

To summarize, arresting officers' obligations under *Riverside* are clearly established in two respects. It was clearly established by 2009 that an arresting officer violates the Fourth Amendment by completing incorrect paperwork and thus

13

"ensur[ing] that [the plaintiff] would essentially be lost in the system." *Drogosch*, 557 F.3d at 379. And by 2023, it was clearly established that making "no efforts" was also a *Riverside* violation, at least where the arresting officers failed to follow otherwise routine procedure and thus contributed to the delay. *Brown*, 75 F.4th at 651, 655.

But Kubrak does not fall into either of those camps. Like the arresting officer in *Roberson*, he approved the paperwork that it was his job to review, and nothing in the record suggests he intentionally hindered the next steps of the officer in charge, prosecutor, or court. Whether more is required under *Riverside* remains unclear.

Thus, it was not objectively unreasonable for Kubrak to conclude he had satisfied his *Riverside* obligation, so he is entitled to qualified immunity on Benson's *Riverside* claim.

### III. Conclusion

For these reasons, Kubrak's motion for summary judgment (ECF No. 29) is GRANTED. A separate judgment will follow.

SO ORDERED.

Dated: September 30, 2024

                                            s/Laurie J. Michelson
                                            LAURIE J. MICHELSON
                                            UNITED STATES DISTRICT JUDGE